IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| CALVIN GREEN, | |
| Plaintiff, | |
| vs. | No. 08-2771-STA-cgc |
| FFC, FLOATS & FUEL CELLS, INC., | |
| Defendant. | |

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 13)
ORDER OF DISMISSAL
ORDER DENYING MOTION TO FILE PROPOSED PRETRIAL ORDER AS MOOT
(DOCKET ENTRY 33)
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

On November 4, 2008, Plaintiff Calvin Green filed a pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., alleging race and sex discrimination and retaliation.  (Docket Entry "D.E." 1.)  On February 3, 2009, Defendant FFC, Floats & Fuel Cells, Inc. ("FFC") filed an answer to the complaint. (D.E. 5.)  On December 17, 2009, Defendant FFC filed a motion for summary judgment. (D.E. 13.)  On January 21, 2010, Plaintiff filed his response.  (D.E. 31.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)(same).[1]

---

[1]   Rule 56(e)(1) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional
(continued...)

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> If a party when opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)  deny the motion;

---

[1]    (...continued)
affidavits.

(2)  order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3)  issue any other just order.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." <u>Cacevic v. City of Hazel Park</u>, 226 F.3d 483, 488 (6th Cir. 2000); <u>see also</u> <u>Good v. Ohio Edison Co.</u>, 149 F.3d 413, 422 (6th Cir. 1998); <u>Plott v. General Motors Corp.</u>, 71 F.3d 1190, 1196-97 (6th Cir. 1995).

I.  <u>Relevant Facts</u>

The relevant facts follow:[2]

1.  Defendant FFC manufactures and repairs aircraft fuel cells and helicopter floats. The company employs 70 full time employees. (D.E. 13-1 at 30.)

2.  Plaintiff was hired at FFC in 1999. In September 2004, Plaintiff applied for the position of

_____

[2]   The Court's task in evaluating Defendant's motion for summary judgment is complicated by Plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides,

the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

Plaintiff has not responded to Defendant's statement of undisputed facts. He has filed a separate version of undisputed facts with attached portions of the record upon which he relies. The Court will attempt to construe the undisputed facts from Plaintiff's verified complaint, the record excerpts of deposition testimony, attached as exhibits to Defendant's motion and Plaintiff's response, and the verified employment records attached as exhibits to Defendant's motion, to the extent possible.

Engineering Assistant and was selected. The position was a promotion. In May 2007, Plaintiff signed a job posting for the position of CNC Operator/Production Engineering Assistant and was selected. (<u>Id.</u> at 3-4.)

3. On July 3, 2007, FFC terminated Plaintiff's employment for unprofessional conduct and creating a hostile work environment in violation of the company's anti-harassment policy. (<u>Id.</u> at 15, 30.)

4. On July 3, 2007, Plaintiff referred to two female coworkers as gay and cursed at them. (<u>Id.</u> at 67.)

5. Shekelia Hardy ("Hardy"), one of the two females, testified at her deposition, that earlier in the day on July 3, she had been upstairs with Plaintiff, and he said something about her and Eva Smith ("Smith") being gay. (D.E. 19, p. 20.) A short time later Hardy was downstairs using the buffing machine next to Smith's work area and Plaintiff walked past her and said something about being gay. (<u>Id.</u>) Smith heard him say something and asked Hardy what he had said. Hardy responded that he was talking about the two of them, Hardy and Smith, being gay. (<u>Id.</u>) Hardy also told Smith that Plaintiff was calling her a lesbian. (<u>Id.</u>) According to Hardy, Plaintiff walked away from them talking loud, cursing, and saying "something gay." (<u>Id.</u>) Hardy testified that "upstairs" it was "fun and games," but "[f]or some reason it got out of hand." (<u>Id.</u>)

6. Plaintiff admitted in his deposition that Hardy pushed him away when he went to whisper something to her and he was "hollering" as he walked away. (D.E. 18, pp. 13, 16.) Hardy testified that Smith said that she heard Green saying "motherfucker." (D.E. 19, p. 20.)

7. According to Smith, Hardy got really upset after Plaintiff whispered something in her ear. (D.E. 20, p. 3.) "She was about to cry." (<u>Id.</u> at 2.) Smith heard Plaintiff cursing Hardy, and she heard Hardy tell him to leave her alone. (<u>Id.</u> at 3.) When Hardy told Smith that Plaintiff was calling her a lesbian, it upset Smith so much that she wanted to go home. (<u>Id.</u>) Employee Rita Draine ("Draine") testified that Plaintiff and Smith had not been on talking terms for several months. (D.E. 17, p.6.)

8.  Dave Sutphin ("Sutphin"), Plant Manager,[3] witnessed Plaintiff's loud cursing and the inappropriate and offensive comments made to Smith and Hardy. (Id. at 30.) When Smith talked to Sutphin about the incident, he told her to write it up. She prepared a hand-written note which she gave to him. (D.E. 20, pp. 2-4.) Sutphin went upstairs to Hardy and explained that Smith had told him that Plaintiff had hurt their feelings. He asked Hardy to write a statement about what had happened. (D.E. 19, pp. 20-21.)[4]

9.  After Hardy gave him a hand-written statement, Sutphin took the statements to Joy Christoph ("Christoph"), Director of Human Relations, and explained that he also had witnessed Plaintiff's cursing loudly and making highly inappropriate and offensive comments to Smith and Hardy. (D.E. 14, p. 2.)

10. Christoph took the matter to Fred Tavoleti ("Tavoleti"), FFC's President, to decide what disciplinary action should be taken. (Id.) After considering Plaintiff's unprovoked abusive language and offensive comments to Smith and Hardy about their sexual orientation, which had upset both of them, and Plaintiff's prior disciplinary record, which included several write-ups and warnings for using abusive language and engaging in inappropriate conduct, Tavoleti, Sutphin, and Christoph decided to discharge Plaintiff for unprofessional conduct and creating a hostile work environment in violation of FFC's anti-harassment policy. He was discharged that day. (Id.)

11. Plaintiff admitted at his deposition that if he had called Hardy or Smith a motherfucker, he would have violated FFC's policy on sexual harassment. (D.E. 18, p. 23.) Plaintiff also admitted that if he had offended Smith and Hardy by cursing them, he would have violated FFC's antiharassment policy. (Id.) Plaintiff denies that he cursed Smith and Hardy. However, in addressing the evidence against him, he

---

[3]  Sutphin became Plant Manager on January 1, 2008. Before becoming Plant Manager, Sutphin was the Repair Station Manager. (D.E. 14, p. 5.)

[4]  Green's contention that Sutphin signed and/or forged Hardy's statement is incorrect. Hardy testified that she "wrote down what was said" and that she signed "Kelia" and Sutphin added "Hardy." (D.E. 19, pp. 19, 21-22.) She testified that she later signed her name in the notarized section. (Id. at 22.)

posed the following question: If "I turned over my left shoulder and yelled out motherfucker(,) how is that in the lady's face cursing them out?" (<u>Id</u> at p. 16.)

12. Smith's contemporaneous hand-written note stated that "Calvin begin cursing (Hardy) out." (D.E. 22, p. 7.) Hardy also testified at her deposition that Green was "cussing." (D.E. 19, p. 20.) Plaintiff admitted that management relied on Smith's and Hardy's hand-written statements when they decided to terminate his employment. (D.E. 17, p. 22.)

13. When Christoph met with Plaintiff to notify him of his termination, he told her that management should not take the word of the two women against his word. (D.E. 14, p. 2.) No one told Green that he was being terminated because of his race or because he had complained of discrimination. (D.E. 18, pp. 21-22.) No one told him that he was being terminated because of what he had said at a meeting in June 2007. (<u>Id.</u> at 22.)

<u>Previous Disciplinary Action</u>

14. On March 30, 2001, Plaintiff received a written reprimand for an outburst of anger and disrespecting fellow employees. (D.E. 23, p. 7.) On July 19, 2001, he was suspended for three days for "a verbal display of anger" towards a coworker. (<u>Id.</u> at 6.) On March 10 and 13, 2006, he was counseled for blowing up at management personnel. (D.E. 22, p. 21; D.E. 23, p. 1.) On January 25, 2007, he received a "last and final warning" for insubordination. (D.E. 22, p. 16.) In addition to the foregoing, Plaintiff also received disciplinary write-ups in October 2000 (D.E. 23, pp. 9-11), on March 7, 2001, (<u>id.</u> at 8); on June 12, 2003, (<u>id.</u> at 5); and on November 11, 2005. (<u>Id.</u> at 2-3.) On June 25, 2007, Plaintiff asked Norman Cole, his supervisor, "Who do I turn my two week notice into, you, Tom or Joy?" (D.E. 22, p. 8.)

<u>Anti-Harassment Policy</u>

15. FFC has a written anti-harassment policy that prohibits "any form of discrimination that is based on gender, sexual orientation, (or) race." (D.E. 24, pp. 3-5.) The policy states that "Sexual harassment on the job is strictly prohibited and can result in disciplinary action, including

7

termination." Sexual harassment is defined as conduct that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Forms of sexual harassment include "sexual epithets (or) derogatory slurs." (Id. at 3.) The policy states that "directing abusive language or displaying blatant or public disrespect toward any employee" may result in severe corrective action up to an including termination. (Id. at 4.) "Any employee who believes he or she has been the subject of harassment, including sexual harassment, should report the alleged conduct immediately to his or her manager and/or to the Human Resources Manager." (Id. at 3.) "An investigation will be conducted as soon as is reasonably practicable." (Id.) FFC's employees are trained on the harassment policy and have been shown Power Point presentations on Sexual Harassment Awareness. (D.E. 13-1, p. 2 (Dodson), p. 3(Draine). Plaintiff received Sexual Harassment Awareness training. (D.E. 18, pp. 23-24; D.E. 23, p. 12.) The anti-harassment policy expressly prohibits retaliation. (D.E. 24, p. 3.)

Inappropriate Remarks

16.  To support his claim of race discrimination, Plaintiff identified inappropriate comments that he heard over the years he was employed by Defendant. He testified that he once heard Sutphin comment to Eva Smith, a black employee, that black folks were doing the rioting in New Orleans. (D.E. 17, p. 21; D.E. 18, p. 3.) Plaintiff also heard Sutphin tell Eva Smith, "Y'all are lazy." (D.E. 18, p. 3; D.E. 17, p. 23.) Plaintiff could think of nothing else Sutphin said that offended him because of his race. (D.E. 18, p. 3.)

17.  Norman Cole made two statements to Plaintiff that offended him because of his race. One was a statement about a "Mississippi Steak Knife." (D.E. 17, pp. 17.)[5] The other was a comment about a black-faced ceramic doll that Cole nicknamed "Stymie" after the young black man in the Little Rascals TV show. (D.E. 18, p. 1-2.) Plaintiff could think of nothing else Cole said or did that offended him because of his race. (Id.) Cole told Steve Groves,

_____

[5]     The Court Reporter transcribed the reference as a Mississippi "State" knife, however, the parties agree it should be Mississippi "steak" knife.

8

Plaintiff's friend and coworker, that a "Mississippi Steak Knife" was used to cut bologna and that he would not have suggested otherwise. (D.E. 17, p. 17.)

18.  Plaintiff was offended when Jim Baldwin once asked him to put some tools in his truck. (D.E. 18, pp.3-5.) Plaintiff admitted, however, that the other men standing around were either supervisors or did not work for FFC and that he and Steve Groves, another FFC employee were there to move tools from a recently purchased company. (Id. at 3-6.) Aside from that one occasion, he could think of nothing else Baldwin said or did that offended him because of his race. (Id. at 6.)

19.  Plaintiff testified that aside from the fact that Fred Tavoleti referred to him as "the angry black man," Tavoleti did not say or do anything else that offended him because of his race. (Id. at 2-3.) Plaintiff also clarified his testimony to say that Tavoleti's referring to him as "the angry black man" did not offend him even though he did not like it. (Id.)

20.  Plaintiff testified that he was offended when Tom Guthrie once answered a question Plaintiff had asked by saying, "Y'all can get minority loans easy now because they are trying to start black businesses." (Id. at 6.) On another occasion, he was offended when Guthrie made the statement, "I figure one of y'all can get in there," when Guthrie was referring to either Plaintiff or Steve Groves' being able to get inside Guthrie's locked truck after he had left his keys inside and locked himself out of it. (Id. at 7.) Guthrie did not do or say anything else that offended Plaintiff because of his race. (Id.)

21.  In 2001 or before, FFC's Sales Manager Walter Dodge once cocked his hat to the side and started talking like a black pimp. It initially offended Plaintiff until Dodge explained that he was doing a comedy routine popularized by a black actor. (Id. at 7.) Aside from the foregoing incidents, Plaintiff could think of no other occasions when a managerial employee said or did something that offended him because of his race. (Id.)

9

<u>Plaintiff's Comments at June 23, 2007 Meeting</u>

22.  On June 23, 2007, Joy Christoph and Dave Sutphin asked Plaintiff to meet with them to discuss his working relationship with Norman Cole. (D.E. 14, p. 1.) At the meeting, Plaintiff brought up the fact that he had heard that Jim Baldwin had touched Shekelia Hardy's breast. (<u>Id.</u>) The incident had occurred a year earlier in June 2006. (<u>Id.</u>;D.E. 19, p. 19.) The company investigated it. (<u>Id.</u>; D.E. 19, p. 19-20.) Hardy testified that it was an accident. (<u>Id.</u> at 19.)

23.  Plaintiff testified at his deposition that he had mentioned two other incidents at the June 23 meeting. One involved Jim Baldwin allegedly tossing a small dot into Eva Smith's cleavage and the other involved Goodyear allegedly calling for Dora Sutphin when her name was Dora Pantenleon. (D.E. 18, p. 11.) Plaintiff did not mention any other incidents at the June 23 meeting.[6] (<u>Id.</u>)

24.  In his EEOC Charge filed on July 9, 2007, Plaintiff alleged that he had been discriminated against because of his race (Black) and in retaliation for complaining of unlawful employment practices. (D.E. 1, p. 4.) He also alleged that on June 7, 2007, Norman Cole ("Cole") had informed him that he "was being demoted." (<u>Id.</u>)

25.  At his discovery deposition, Plaintiff admitted that he did not suffer an adverse employment action in the year before he was terminated. (D.E. 19, p. 8.) The alleged events supporting his claims of sex discrimination occurred more than a year prior to his termination on July 3, 2007. (D.E. 17, pp. 18-21; D.E. 18, pp. 8-9.)

II.  <u>Legal Analysis</u>

A.  <u>Sex Discrimination</u>

Exhaustion of administrative remedies is a prerequisite to filing a district court lawsuit alleging discrimination under Title VII. <u>Brown v. General Serv. Admin.</u>, 425 U.S. 820, 823-33 (1979). A

---

[6]     Defendant denies that Plaintiff mentioned the second and third alleged incidents on June 23, 2007, but Defendant does not dispute the allegations for purposes of summary judgment.

plaintiff may only bring an action in district court after he has exhausted the administrative remedies provided under 42 U.S.C. § 20006e-16. Timely filing a charge with the EEOC and subsequently filing a complaint in federal district court in a timely manner are prerequisites to maintaining a Title VII action. Lomax v. Sears, Roebuck, & Co., 2000 WL 1888715, *6 (6th Cir. 2000). Such "procedural requirements established by Congress for gaining acess to the federal courts are not to be disregarded." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984). Furthermore, such jurisdictional filing requirements may not be set aside just because a plaintiff initiates an action without the assistance of counsel and is unfamiliar with the mechanics of Title VII. See Askew v. Stone, 1996 WL 135024 (6th Cir. 1996).

There is some disagreement within the Sixth Circuit regarding whether to treat a failure to exhaust administrative remedies as a jurisdictional bar or a condition precedent to an action in district court. Cf. McKnight v. Gates, 2007 WL 1849986 (M.D. Tenn. 2007); see also Hopson v. DaimlerChrysler Corp., 157 Fed. Appx. 813, 2005 WL 3065966 (6th Cir. 2005); Askew, 81 F.3d at 160. Regardless of how the Sixth Circuit chooses to treat this failure, it is clear that courts consistently hold that "when a claim is not first presented to the EEOC, the claim may not be brought in court." Lomax, 2000 WL 1888715 a *6.

On July 9, 2007, Plaintiff brought a claim of employment discrimination on the basis of his race and in retaliation for complaining of unlawful discrimination. (D.E. 1, p. 4.)   Green

11

checked the boxes for race and retaliation on the charge. (Id.) No evidence has been presented in this forum which demonstrates that the charge was ever amended.  Plaintiff's lawsuit filed on November 4, 2008, mentions for the first time claims that Plaintiff was discriminated against because of his sex.

In order for the district court to have jurisdiction of Title VII claims, a plaintiff must first unsuccessfully pursue administrative relief; therefore, if a plaintiff does not first present a claim to the EEOC, that claim may not be brought before the court. Ang v. Proctor & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991). However, "if the allegation could 'reasonably be expected to grow out of the charge of discrimination' with the EEOC," the subsequent claim will not then be barred. King v. Tecumseh Public Schools, 2000 WL 1256899 (6th Cir. 2000)(quoting Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992)). The plaintiff is not precluded from bringing suit on a claim "where the facts related with respect to the charged claim would prompt the EEOC to investigate [the] different, uncharged claim." Id. (quoting Davis v. Sodexho, 157 F.3d 460, 463 (6th Cir. 1998)). In the present case, the plaintiff is pro se, and when a Title VII claimant proceeds without counsel and is untrained in the law, the courts will interpret an EEOC charge broadly. Lomax, 2000 WL 1888715 at *6. Nevertheless, "all claimants, including pro se claimants, have a responsibility to meet the requirements of the law, which include setting out the specific nature of each of their claims and the specific facts supporting each claim." Id.

12

The question for Plaintiff's claims of sex discrimination is whether they can be reasonably expected to grow out of the EEOC charge.  Plaintiff's charge clearly states that he believes he was "discriminated against because of [his] race (Black) and in retaliation for complaining of an unlawful employment practice." (D.E. 1, p. 4.)  Although the charge refers to Plaintiff's complaints of "racial and sexual comments" made during a meeting on June 23, 2007, the comments were about male FFC supervisors' treatment of Plaintiff's female coworkers, not sexual harassment of the Plaintiff.  The charge also contains references to Plaintiff's comments about the sexuality of Plaintiff's female coworkers, which, ultimately, resulted in his termination. (Id.)

Plaintiff Green's charge contains no allegations of acts of sex discrimination against Plaintiff.  A claim of sex discrimination would not be expected to reasonably grow out of such allegations. See Young v. City of Houston, 906 F.2d 177, 179-80 (5th Cir. 1990)(sex discrimination charge could not reasonably be expected to grow out of race and age discrimination); cf. Reynolds v. Solectron Global Serv., 358 F. Supp.2d 688, 691-92 (W.D. Tenn. 2005)(race and color discrimination charge cannot reasonably be expected to grow out of sex discrimination charge).  Plaintiff's claims of sex discrimination must be dismissed because he failed to present them to the EEOC first, and they cannot be reasonably expected to grow out of the EEOC charge of race discrimination and retaliation. Defendant is entitle to judgment as a matter of law on Plaintiff's claims of sex discrimination.

B.   <u>Race discrimination</u>

The United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), established a method for evaluating evidence in discrimination cases, where, as here, Plaintiff has no direct evidence of discrimination.[7]   That method has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

<u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981) (citations omitted).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Id.</u> at 253.

---

[7]      Plaintiff alleges, but does not provide credible, material evidence of direct discrimination "which, if believed requires a conclusion that unlawful discrimination was at least a motivating factor in the [Defendant's] actions" and "does not require a factfinder to draw any inferences" to reach that conclusion. <u>Kocak v. Community Health Partners of Ohio, Inc.</u>, 400 F.3d 466, 470 (6th Cir. 2005). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." <u>Amini v. Oberlin College</u>, 440 F.3d 350, 359 (6th Cir. 2006). A review of the record shows no statement, "which, if believed, requires no inferences to conclude that unlawful [discrimination] was a motivating factor in the employer's action" in terminating Plaintiff's employment. <u>See</u> <u>Imalle v. Reliance Med. Prods., Inc.</u>, 515 F.3d 531, 543-44 (6th Cir. 2008). There is no explicit statement by a decisionmaker that he or she was acting on illegal grounds. Because the Court finds no material evidence of direct discrimination the Plaintiff must establish a <u>prima facie</u> case of discrimination pursuant to the <u>McDonnell Douglas</u> formulation from which a discriminatory motive may be inferred.

14

To establish a <u>prima</u> <u>facie</u> case of discrimination, Plaintiff must demonstrate:

> (1) he [or she] was a member of a protected class; (2) that he [or she] suffered an adverse employment action; (3) that he [or she] was qualified for the position; and (4) circumstances indicated that his [or her] race played a role in the adverse employment action.

<u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802; <u>Braithwaite v. Timken Co.</u>, 258 F.3d 488, 493 (6th Cir. 2001). Put differently, element (4) requires Plaintiff to show, that for the same or similar conduct, he was treated differently than similarly situated employees. The fourth prong requires that Plaintiff show that the person treated more favorably was similarly situated to Plaintiff in all relevant respects. <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605, 610-11 (6th Cir. 2002). <u>See also</u> <u>Clay v. United Parcel Service, Inc.</u>, 501 F.3d 695, 703 (6th Cir. 2007).

The parties agree that Plaintiff is a member of a protected class, that he was qualified for his position, and that he suffered an adverse employment action. Defendant FFC argues that Plaintiff fails to establish a prima facie case of race discrimination because he fails to identify a similarly situated individual that was treated differently. (D.E. 15-1 at 12-13.)

In cases involving a disciplinary action, the standard for identifying a similarly situated individual that was treated differently requires the plaintiff to "show that all relevant aspects of his employment situation are 'nearly identical' to those of the comparison employee whom he alleges was treated more favorably". <u>Dickens v. Interstate Brands Corp.</u>, 2008 WL 2570864

15

(W.D. Tenn. 2008).   The Sixth Circuit Court of Appeals has explained:

> [T]o be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

As FFC notes, Plaintiff fails "to identify, or even allege, that another employee is similarly situated.   (Id.)   Because Plaintiff fails to establish by affidavits or other evidence that "for the same or similar conduct, he was treated differently than similarly-situated non-minority employees," Mitchell, 964 F.2d at 582-83, or provide other direct evidence of racial discrimination, Plaintiff fails to state a prima facie case of race discrimination. Plaintiff has not demonstrated that a similarly situated non-minority employee was treated differently after two people complained in writing that the non-minority employee had cursed them out and disrespected their sexual orientation. (Id.) Bald assertions and conclusory statements fail to provide any factual support for Green's claim of race discrimination. Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996).

FFC argues, that even if Plaintiff could establish a prima facie case, Plaintiff has no evidence that the legitimate, non-discriminatory reason for terminating him was a pretext for discrimination. (D.E. 15-1 at 12.)   FFC alleges that Green was terminated on the basis of information which FFC believed was true

that Green violated the company's sexual harassment policy. Because FFC was reasonably informed and considered the decision to terminate Green in advance, this is a legitimate, nondiscriminatory reason to terminate him.  See Giles v. Norman Noble, Inc., 88 Fed. Appx. 890 (6th Cir. 2004).

Once an employer offers a legitimate, nondiscriminatory reason for taking an adverse employment action, a plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." Manzer v.. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994). In the Sixth Circuit, proof of pretext has been organized around three general propositions: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." Manzer, 29 F.3d at 1084(quoting McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir. 1993)).

Plaintiff Green fails to demonstrate pretext because his proof consists of conclusive allegations and his subjective belief that Dave Sutphin, acting production and plant manager, "engaged in a plot and conspiracy to terminate Plaintiff." (D.E. 31-1, p. 8.) [R]umors, conclusory allegations and subjective beliefs ... are wholly insufficient to establish a claim of discrimination as a matter of law." Mitchell, 964 F.2d at 585.

Green also focuses on the first proposition, contending that he did not engage in the acts of which he was accused. "[I]n determining if the plaintiffs have raised a genuine issue of

material fact as to pretext, [the Court] should consider not whether [Plaintiff] actually breached [Defendant's] rules, but rather whether the [defendant] had an honestly held belief that they had committed [a violation of the rules]." <u>Allen v. Highlands Hosp. Corp.</u>, 545 F.3d 387, 398 (6th Cir. 2008).

> [T]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. [W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

<u>Id.</u> (quoting <u>Michael v. Caterpillar Fin. Servs. Corp.</u>, 496 F.3d 584, 598-99 (6th Cir. 2007).

In this case, FFC received the statements of two employees, which were corroborated by the acting plant manager. The employees were interviewed by the acting plant manager. Plaintiff's behavior disrupted the work of his two female co-employees. One employee was crying and the other requested to be allowed to leave. Plaintiff's employment history was reviewed by the company owner, the human resources director, and the acting plant manager. FFC has documented Plaintiff's pattern of outbursts and disrespecting fellow employees and management personnel which resulted in discipline against Plaintiff and a "last and final warning" on January 25, 2007. (D.E. 22, p. 8, pp. 16-21; D.E. 23, pp. 1-11.) Plaintiff acknowledged that "if" he committed the behavior upon which Defendant based his termination, he violated FFC's sexual harassment policy. Plaintiff has not provided documents or

18

testimony which support an inference that FFC did not honestly believe the allegations of sexual harassment or that FFC relied on an unlawful motive in terminating him.

There are no genuine issues of material fact as it relates to Plaintiff's claim of race discrimination, and Defendant is entitled to judgment as a matter of law.

      C.   Retaliation

Plaintiff alleges that FFC retaliated against him because in a meeting on June 23, 2007, he complained of "racial and sexual comments that occurred on a regular basis from Dave, Norman Cole, (W/M) and Jim Baldwin (W/M) Plant Manager which [he] felt were inappropriate and [were] the reason he moved to engineering" and did not want to return to manufacturing. (D.E. 1 at 4). Plaintiff was fired on July 3, 2007.

To make out a prima facie case of retaliation under Title VII, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Garner v. Cuyahoga County Juvenile Court, No. 07-3602, 2009 WL 137227, at *13 (6th Cir. Jan. 22, 2009)(citing Morris v. Oldham Fiscal Ct., 201 F.3d 784, 792 (6th Cir. 2000); see also Michael, 496 F.3d at 593. The Sixth Circuit has explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant

19

enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence or retaliatory conduct to establish causality. <u>See</u> <u>Little v. BP Exploration & Oil Co.</u>, 265 F.3d 357, 365 (6th Cir. 2001)("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.

<u>Mickey v. Zeidler Tool & Die Co.</u>, 516 F.3d 516, 525 (6th Cir. 2008).

If the plaintiff establishes a <u>prima</u> <u>facie</u> case, then the defendant may offer a legitimate business justification for its actions, which the plaintiff must rebut with evidence of pretext. <u>Michael</u>, 496 F.3d at 597. The plaintiff may show pretext in the same manner as in a disparate treatment theory of discrimination. <u>Imwalle v. Reliance Med. Prods., Inc.</u>, 515 F.3d 531, 545 (6th Cir. 2008).

FFC argues Plaintiff's three related incidents of "protected activity" do not meet the requirements for protected activity under the "opposition clause." <u>Jones v. Southwest Tennessee Community College</u>, 2008 WL 4982742 *5 (W.D. Tenn. 2008). The Court agrees that Plaintiff's mere mention of the three incidents as his opposition to a proposed move to manufacturing from engineering, does not establish active, consistent "opposing" activities which warrant protection against retaliation.[8]

---

[8]   <u>Bell v. Safety Grooving & Grinding, LP</u>, 107 Fed. Appx. 607, 610 (6th Cir. 2004)(comparing <u>Johnson v. Univ. of Cincinnati</u>, 215 F.3d 561, 581 (6th Cir. 2000), where plaintiff engaged in "opposing" conduct by sending numerous letters
(continued...)

Even if it is assumed that Plaintiff could satisfy the first three elements of a prima facie case, he is unable to establish causation. To establish the fourth, or causal connection, element of a prima facie case of retaliation, Plaintiff must adduce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken if Plaintiff had not engaged in protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). "[T]he mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." Balmer v. HCA, Inc., 423 F.3d 606, 615 (6th Cir. 2005).

The Sixth Circuit has recognized that in order to show a causal connection, a plaintiff must show "a temporal connection coupled with other indicia of retaliatory conduct." Little, 265 F.3d at 364. As stated in Little, there must be other evidence of retaliatory conduct, along with the temporal connection, in order to satisfy the causal connection requirement of a prima facie case of retaliation. Little, 265 F.3d at 364. In Little, Little's co-worker's testified that they were asked to make false claims of theft and harassment against Little or they would lose their jobs. Id. at 365. In this case, the testimony of Eva Smith and Shekelia Hardy does not support an inference of retaliation. Smith and Hardy

---

[8]      (...continued)
to his employer objecting to its discriminatory hiring practices "as a whole" to Booker v. Williamson Tobacco Co., 879 F.2d 1304 (6th Cir. 1989), where plaintiff did not engage in "opposition" by sending only one letter contesting a single decision to his employer's human resources department).

made voluntary statements and Plaintiff's harassing conduct was independently witnesses by the acting plant manager, Dave Sutphin.

Even if Plaintiff were deemed to have established a prima facie retaliation case, FFC has articulated a legitimate, nondiscriminatory reason, Plaintiff's disciplinary history and his violation of FFC's sexual harassment policy.  "[E]stablishing that the employer's reason was a pretext requires that a plaintiff do more than simply impugn the legitimacy of the asserted justification; in addition, the plaintiff must also adduce evidence of the employer's [retaliatory] animus. Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 804 (6th Cir. 1994).  Plaintiff has come forward with no evidence to show that FFC's stated reason for his termination was pretextual and no direct evidence that he was terminated in retaliation for any activity that was protected by Title VII.  See Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996) (conclusory statements, subjective beliefs, or intuition cannot defeat summary judgment).

There are no genuine issues of material fact as it relates to Plaintiff's claim of retaliation, and Defendant is entitled to judgment as a matter of law.

Defendant FFC's motion for summary judgment (D.E. 13) is GRANTED. Accordingly, the Court DISMISSES Plaintiff's complaint. Defendant's motion for leave to file Defendant's pretrial order (D.E. 33) is DENIED as MOOT.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek

to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous.  Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a).  See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals.  Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46.  The same considerations that lead the Court to dismiss this case for compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on

appeal <u>in</u> <u>forma</u> <u>pauperis</u>. Leave to proceed on appeal <u>in</u> <u>forma</u> <u>pauperis</u> is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in</u> forma <u>pauperis</u> and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 10th day of March, 2010.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE